Estate of William Scadron, Deceased, Dorothy Scadron, Administratrix, v. Commissioner. Estate of Samuel Scadron, Deceased, Frances Scadron, Administratrix, v. Commissioner.
Estate of William Scadron v. Commissioner
Docket Nos. 34530, 34531.
United States Tax Court
1953 Tax Ct. Memo LEXIS 290; 12 T.C.M. (CCH) 416; T.C.M. (RIA) 53133; April 17, 1953
*290 Raphael P. Koenig, Esq., 120 Broadway, New York, N. Y., and Saul L. Harris, Esq., for the petitioners. John J. Madden, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: These proceedings involve the propriety of 50 per cent additions for fraud under section 293 (b) as follows: Fiscal year
ending
Amount
Docket No. 34530
April 30, 1944
$ 2,133.51
April 30, 1945
23,774.56
April 30, 1946
25,198.55
Docket No. 34531
April 30, 1944
999.18
April 30, 1945
19,946.42
April 30, 1946
19,583.71
The petitioners allege the additions for fraud as error and also question whether such additions can validly be made against the estates of the petitioners who are deceased. At the trial the respondent abandoned any claim for additions for fraud for the fiscal year ending in 1946 since the returns for that year were filed after both William and Samuel Scadron had died. Findings of Fact The stipulated facts are so found and the stipulation is included herein by reference. William Scadron and Samuel Scadron were brothers. They filed individual income tax returns for the fiscal years ending April 30, 1944 and *291 1945 on the cash basis with the collector for the third district of New York. William died on June 15, 1946, and Samuel on June 27 of the same year. During the fiscal years in question the brothers were members, with another brother, Harold, of a partnership, operating as Scadron Brothers. The partnership was engaged in the manufacture and converting of upholstery and drapery fabrics and also acted as a sales agent. In October 1943 William formed a partnership with Sigmund Berkowitz called Budd Fabrics Company to which Samuel and Harold were also admitted as partners prior to April 30, 1944. William had on deposit in bank accounts the following sums at the indicated times: April 30, 1943
April 30, 1944
April 30, 1945
$1,681.16
$14,627.94
$63,362.61
William also owned, at the indicated times, the following: Item
4/30/43
4/30/44
4/30/45
Interest in Scadron Brothers
$13,941.08
$ 8,649.70
$ 21,424.62
Interest in Budd Fabrics
1,150.00
2,694.85
Stocks and bonds
562.50
712.50
1,087.50
Jewelry and furs
1,045.00
6,045.00
Mt. Holly Textile Co.
12,500.00
Totals (including cash in banks)
$16,184.74
$26,185.14
$107,114.58
*292 It is not known whether William had other assets on those dates. For the fiscal year ended April 30, 1944, William's cost of living was $9,627.68 and for the fiscal year ended April 30, 1945, his cost of living was $9,564.23. Samuel had on deposit in bank accounts the following sums at the indicated times: April 30, 1943
April 30, 1944
April 30, 1945
$1,861.78
$12,624.45
$55,502.86
Samuel also owned, at the indicated times, the following: Item
4/30/44
4/30/44
4/30/45
Interest in Scadron Brothers
$ 9,150.39
$ 7,130.21
$17,188.83
Interest in Budd Fabrics Co.
1,150.00
2,694.85
Stocks and bonds
1,799.40
3,969.05
3,625.00
Mt. Holly Textile Co.
12,500.00
Loans receivable
1,000.00
Jewelry and furs
222.20
Goldron Realty Co. stock
4,500.00
Totals (including cash in banks)
$12,811.57
$24,873.71
$97,233.74 For the fiscal year ended April 30, 1944, Samuel's cost of living was $5,125.60 and for the fiscal year ended April 30, 1945, his cost of living was $11,371.02. For the fiscal year ended April 30, 1944, William reported gross income of $9,444.28. He claimed deductions for income tax purposes of *293 $484.49 and thus reported a net income for income tax purposes in the amount of $8,959.79. He claimed no deductions from gross income for victory tax purposes. For the fiscal year ended April 30, 1945, William reported gross income of $29,366.20. He claimed deductions in the sum of $737.90 and thus reported net income for this period in the sum of $28,628.30. William's net income for the fiscal period April 30, 1944, computed on a net worth basis and allowing the same deductions as claimed on the return filed by him for that period, was $19,143.59. For the fiscal year ended April 30, 1945, it was $89,755.77. For the fiscal year ended April 30, 1944, Samuel reported gross income of $13,579.29. He claimed deductions for income tax purposes in the sum of $329.42. His net income reported for income tax purposes was therefore $13,249.86 and his net income reported for victory tax purposes was $13,579.28. For the fiscal year ended April 30, 1945, Samuel reported gross income of $32,266.20. He claimed deductions of $1,227.96, and thus reported a net income of $31,038.24. Samuel's net income for the fiscal year ended April 30, 1944, computed on a net worth basis and allowing the *294 same deductions as claimed on the return filed by him for that period, was $16,858.32. For the fiscal year ended April 30, 1944, it was $82,503.09. During the fiscal years ended April 30, 1944 and April 30, 1945, Budd Fabrics Company sold merchandise to Sanbern, Inc. Delivery of this merchandise was handled by William who demanded and received from Abraham Bernstein, president of Sanbern, Inc., cash sums in excess of the invoice price. Such cash sums amounted to at least $643.50 in the earlier fiscal year and $2,310.50 in the later year. These purchases were entered on the books of Sanbern, Inc. as purchased for the full price paid, in other words the invoice price plus the additional cash paid to William. On the books of Budd Fabrics Company these transactions with Sanbern, Inc. were entered as sales at the invoice prices and the cash paid to William was not entered. The income tax returns of both William and Samuel for the years in question were prepared on the basis of the income shown on the books of Scadron Brothers Upholstery Company and Budd Fabrics Company. The books of the latter company did not properly reflect income and the respondent was justified in using the net *295 worth method in arriving at the taxable income of both William and Samuel. The income and victory tax return for the fiscal year ended April 30, 1944, and the income tax return for the fiscal year ended April 30, 1945, filed by William were each false and fraudulent with intent to evade tax. Part of the deficiencies in income and victory tax for the fiscal year ended April 30, 1944, and part of the deficiencies in income tax for the fiscal year ended April 30, 1945, with respect to William were due to fraud with intent to evade tax. No part of the deficiency for either of the years in controversy with respect to Samuel is due to fraud with intent to evade tax. Opinion The original taxpayers involved in these proceedings are both dead. The petitioners, the administratrixes of the decedents' respective estates, are apparently somewhat in the dark about the taxpayers' affairs and do not contest the deficiencies determined by the respondent. The only question for decision is whether the additions to tax because of fraud were proper. It is so well established that the burden on this issue rests on the respondent that no citation of authority is necessary. The respondent called *296 as witnesses the revenue agents who investigated the cases, the taxpayers' brother, Harold, who was a member of the partnerships named in our findings with his brothers and who testified sketchily and Bernstein, president of Sanbern, Inc., who testified and gave evidence concerning side cash transactions with William. With reference to William, we think the respondent has produced persuasive evidence that he failed to report income which he received and that such failure was due to fraud with intent to evade tax. His transactions have some color of the black market. The deficiencies in each year were large. True, the respondent used the net worth method in computing net income, but he was justified in so doing, and we do not understand the petitioners to contest the respondent's action in this respect. The evidence conclusively shows that William received cash payments from a customer of his partnership over and above invoice prices. These payments were not reflected in William's income as reported by him for tax purposes and were not put on the partnership books. While the amounts testified to were not large when compared with the total deficiencies, we think, taking the record *297 as a whole, that the conclusion that at least part of the deficiency in each year was due to fraud with intent to evade tax is justified. With respect to Samuel we see the picture differently. There is no evidence at all that he ever received side payments in cash. Nor is there any evidence to show that William split the payments which he received with Samuel or that Samuel ever knew that his brother was exacting additional cash from customers. The cash was not reflected on the partnership books and we cannot determine that Samuel benefited in any way from it. So far as the record goes the black market operations of William were personal to him. Harold Scadron, another brother and also a member of the partnership, testified he knew nothing of any such payments. As to William there is direct evidence of a source of unreported income. This is not true as to Samuel. The most that can be said is that Samuel and William were members of the same partnerships and that by use of the net worth method it has been determined that Samuel had substantial unreported income. But we cannot find facts in the record that would enable us to sustain the respondent's determination that Samuel's failure *298 to report all or any part of that income was due to fraud with intent to evade tax. The fraud issue must be determined in favor of Samuel. In passing we point out that this is not a case like , where the taxpayers were also members of a partnership but where it was conclusively established that all were participants in a scheme for falsifying the partnership books in order to conceal income. The further question, whether the additions for fraud survive the death of the taxpayer, has heretofore been decided against the petitioners by this Court, , affd. (C.A. 1), ; affd. (C.A. 6), . The petitioners have asked for a reconsideration of our decisions on the question but we perceive no reason for doing so. Decisions will be entered under Rule 50.